# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

STAN E SZCZYGIEL,

    *Plaintiff,*

vs.

Case No. 14-CV-3011-EFM

STATE OF KANSAS, *et al.*,

    *Defendants.*

## ORDER

Plaintiff Stan Szczygiel proceeds *pro se* on an Amended Complaint he filed while in custody of the Kansas Department of Corrections ("KDOC") at Norton Correctional Facility ("NCF"). In his Amended Complaint, Plaintiff alleges that Defendants violated his constitutional rights and the Americans with Disabilities Act ("ADA") when Defendants denied his request for minimum custody classification and participation in KDOC's work release program. Defendants Jay Shelton, Joel Hrabe, Hazel Peterson, the State of Kansas, and the Kansas Department of Corrections have filed a Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 69). In response, Plaintiff filed a Cross-Motion for Summary Judgment and Objections to Defendants' Motion to Dismiss or in the Alternative for Summary

Judgment (Docs. 77 and 79).[1] For the reasons discussed below, the Court grants Defendants' motion and denies Plaintiff's motion.

## I. Factual and Procedural Background[2]

**Local Rules for Summary Judgment**

The District of Kansas Local Rules set forth specific requirements for summary judgment motions. Under D. Kan. Rule 56.1, "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."[3] The rule further states that:

> (1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and if applicable, state the number of movant's fact that is disputed.[4]

Plaintiff is *pro se*, and the Court must afford him some leniency in his filings.[5] A *pro se* litigant, however, is still expected to "follow the same rules of procedure that govern other litigants."[6]

---

[1] The Court filed Plaintiff's Cross-Motion for Summary Judgment and Objections to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment twice: once as a cross-motion for summary judgment and once as a response to Defendants' Motion to Dismiss or for Summary Judgment.

[2] Both parties provide evidence outside the pleadings, and therefore the Court construes Defendants' Motion to Dismiss under Rule 12(b)(6) as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) (stating that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"); *Wells v. Shalala*, 228 F.3d 1137, 1140 n. 1 (10th Cir. 2000); *see also Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006) (finding that the plaintiff had "explicit notice" where the motion's title referenced summary judgment in the alternative and the motion included materials outside the pleadings). The Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party in accordance with summary judgment procedures.

[3] D. Kan. Rule 56.1(a).

[4] D. Kan. Rule 56.1(b).

[5] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[6] *Id*.

Here, Plaintiff failed to controvert any of Defendants' facts. Therefore, these facts are deemed admitted for purposes of summary judgment.

**Facts**

Plaintiff is an inmate in the custody of Kansas Department of Corrections. At the time of the events alleged in his Amended Complaint, Plaintiff was an inmate housed at NCF in Norton, Kansas. Defendant Shelton is the Warden of NCF, and Defendant Hrabe serves as Deputy Warden. Defendant Peterson is the Classification Administrator at NCF.

### A. Plaintiff's Request to Be Classified Minimum Custody by Exception

Plaintiff suffers from post-traumatic stress disorder ("PTSD"), which manifests itself as an acute form of claustrophobia. Plaintiff alleges that the claustrophobia is triggered when he is housed or confined in small rooms or cells with other persons. In June 2013, Plaintiff received an Action Notice from the KDOC Prisoner Review Board ("PRB"). The Action Notice recommended, in part, that Plaintiff remain free of disciplinary reports and transition to work release. Two months later, on August 12, 2013, Peterson submitted a classification review indicating that Plaintiff requested placement in minimum custody by exception so he could participate in KDOC's work release program. Specifically, the classification review stated:

> REQUEST MINIMUM BY EXCEPTION FOR PARTICIPATION IN WORK RELEASE. Mr. Szczygiel was reviewed on 8/17/2013 for his regular review. He has requested minimum by exception for the purpose of being able to participate in the Work Release program, which was recommended by the Prisoner Review Board in May 2013. It is believed that if Mr. Szczygiel is able to obtain his minimum custody and participate in Work Release, the program will help ease his transition for a successful release back into society.

On September 16, 2013, Hrabe denied Plaintiff's request for minimum custody by exception, citing "NCF MH ISSUES, NOT SUITABLE MULTI-OCC. HOUSING." Plaintiff

was notified of the denial two days later. On September 21, 2013, Plaintiff submitted an administrative appeal, which Shelton denied on September 24, 2013.

Hrabe disapproved Plaintiff's classification request because of Plaintiff's inability to live in multi-occupancy housing. NCF's mental health coordinator reported to Hrabe that when Plaintiff is housed with other inmates, it increases his PTSD symptoms, and that she would be very reluctant to grant Plaintiff minimum custody because his history demonstrates that he cannot live in multi-occupancy housing. For example, while housed in C Unit at NCF in January 2011, Plaintiff reported "experiencing a couple of flashbacks in the past month, including increased stress, tinnitus and stress" and that he had a "complete auditory, visual, sensual" flashback. He further reported "that the C-3 dayroom is noise 20 hours a day, and this adds to his stress . . . ." Although other inmates were housed in the C Unit at the time Plaintiff reported this stress, Plaintiff never had a cellmate while in C Unit. Plaintiff's records also reveal a number of disciplinary reports involving the use of stimulants, drugs, and other dangerous contraband as well as battery, escape, and arson while living in multi-occupancy housing.

NCF's Internal Management Policies and Procedures contain certain requirements for an inmate to be allowed to participate in work release. One of these requirements is that the inmate must be housed in a minimum security living area outside KDOC's facilities for at least thirty days before placement in work release. This requirement ensures that an inmate can function safely and securely in a multi-occupancy setting outside the confines of the correctional facility. The minimum security housing at NCF is located outside of the facility and contains rooms that house two to four inmates. Many of the rooms have shared bathrooms, which results in up to eight inmates sharing a bathroom.

After Plaintiff's request for minimum custody was denied, NCF attempted to work with him to build a successful record of being housed in multi-occupancy setting. Hrabe tried to transition Plaintiff to B Unit, which is a multi-occupancy dormitory within NCF's facility. B Unit is a more structured environment than NCF's minimum security living facility, and thus, a successful transition to B Unit is Plaintiff's next step for demonstrating that he can handle multi-occupancy housing. Plaintiff, however, refused to live in multi-occupancy housing within NCF, and thus, was not able to develop a successful record.

### B. Plaintiff's Lawsuit

Plaintiff filed this lawsuit on January 13, 2014. After an initial round of briefing by the parties, Plaintiff filed an Amended Complaint on February 2, 2015. The Amended Complaint alleges that Defendants[7] are liable under 42 U.S.C. § 1983 for violating Plaintiff's First, Eighth, and Fourteenth Amendment rights and that Defendants violated the ADA when they denied his request for minimum custody by exception classification and participation in work release. Defendants subsequently filed a Motion to Dismiss, or in the Alternative Motion for Summary Judgment. In response, Plaintiff filed a Cross-Motion for Summary Judgment and Objections to Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment ("Plaintiff's combined motion"), which the Court has construed as both a cross-motion for summary judgment and Plaintiff's response to Defendants' motion. These motions are now ripe for the Court's consideration.

---

[7] Although Plaintiff's Amended Complaint asserts claims against Defendants Douglas Burris and Ray Roberts, the Court previously dismissed these Defendants from this lawsuit. They are not named in the case caption, and the record in this case does not show that they have been served notice of re-joinder. Therefore, the Court will treat them as dismissed from this case and will not address any claims asserted against them.

## II. Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[10] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[14] Each party retains the burden of establishing the lack of a genuine

---

[8] Fed. R. Civ. P. 56(c).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11] *Id.* (citing Fed. R. Civ. P. 56(e)).

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

issue of material fact and entitlement to judgment as a matter of law.[15] Each motion will be considered separately.[16]

Finally, because Plaintiff proceeds *pro se*, the Court reviews his pleadings, including those related to Defendants' motion, "liberally and hold[s] them to a less stringent standard than those drafted by attorneys."[17] The Court, however, cannot assume the role of advocate for the *pro se* litigant.[18] Likewise, Plaintiff's *pro se* status does not relieve him from the obligation to comply with procedural rules, including the Federal Rules of Civil Procedure.[19]

### III. Analysis

Plaintiff's combined motion makes it difficult for the Court to discern which arguments Plaintiff asserts in response to Defendants' summary judgment motion and which arguments he asserts in support of his own dispositive motion. Moreover, Defendants' motion and Plaintiff's combined motion are like two ships passing in the night. Plaintiff ignores almost all of Defendants' legal arguments and instead focuses solely on those issues he believes most relevant to his claims. The Court will consider Defendants' summary judgment motion first. To the extent Plaintiff's combined motion touches on one of Defendants' arguments, the Court will consider it as part of his response to Defendants' motion.

**A. Section 1983 Claims**

---

[15] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[16] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[17] *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (quotations omitted).

[18] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

[19] *Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 n.2 (10th Cir. 2002).

Plaintiff alleges three constitutional violations under § 1983. First, he asserts that Defendants Hrabe, Peterson, and Shelton violated his right to equal protection and due process under the Fourteenth Amendment. Second, he asserts that Hrabe violated his right to be free from cruel and unusual punishment under the Eighth Amendment. And third, he asserts that Hrabe violated his right to seek redress of a grievance under the First Amendment. Defendants seek summary judgment on each of these claims.

1. **Fourteenth Amendment**

    a. **Equal Protection**

Plaintiff alleges that Hrabe, Peterson, and Shelton violated the Equal Protection Clause of the Fourteenth Amendment when they denied his transfer to the work release program because of his PTSD and inability to live in multi-occupancy housing. The Fourteenth Amendment requires that states treat similarly situated people alike.[20] To assert a viable equal protection claim, Plaintiff must first show that he was treated differently from others who were similarly situated to him.[21]

Defendants argue that Plaintiff has not established a violation of his equal protection rights because he has not alleged any facts showing that he was similarly situated to other inmates who were allowed to participate in work release. Defendants further argue that the evidence shows that Plaintiff is not similarly situated to those inmates because of Plaintiff's inability to live in multi-occupancy housing. The Court agrees. Plaintiff's combined motion does not mention his equal protection claim let alone demonstrate a genuine dispute regarding

---

[20] *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) (citation omitted).

[21] *Id*. (citation omitted).

the fact that he was not similarly situated to other inmates allowed on work release. Therefore, the Court grants summary judgment to Defendants on this claim.

### b. Procedural Due Process

Plaintiff claims that Kansas statutory law governing the Kansas PRB creates a liberty interest preventing prison officials from denying or altering the Kansas PRB recommendations. Plaintiff cites K.S.A. § 22-3710, which states in part: "The orders of the board shall not be reviewable except as to compliance with the terms of this act or other applicable laws of the state." According to Plaintiff, this statute "creates a liberty interest protected by the Due Process clause of the 14th Amendment by placing a substantive limitation on Defendants Peterson, Hrabe, and Shelton by prohibiting their review, altering or amending or denying the substantive orders of the (PRB)."

Plaintiff's argument has no merit. Following the Supreme Court's decision in *Sandin v. Conner*, states can create liberty interests protected by the due process clause only when the interest may be characterized as a "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[22] It is well established that custody decisions and parole classifications do not involve liberty interests and therefore are not protected by the Due Process Clause of the Fourteenth Amendment.[23] Therefore, because Plaintiff has no protected liberty interest in a minimum custody classification, Defendants did not deny him procedural due process when they denied his minimum custody classification request.

---

[22] 515 U.S. 472, 482-84 (1995).

[23] *See, e.g., Sandin*, 515 U.S. at 486 (finding no liberty interest in segregated confinement); *Walling v. Simmons*, 1998 WL 229541, at *3 (D. Kan. Apr. 8, 1998), *aff'd*, 156 F.3d 1245 (10th Cir. 1998) (finding no liberty interest in custody classification).

Moreover, Plaintiff has pointed to no statute or case law that gives the Kansas PRB the authority to determine custody classifications or program eligibility. These decisions lie, by statute, with correctional facility officials.[24] Kansas statutory law provides that the duties of facility wardens and deputy wardens include overseeing "the government and discipline of the correctional institution."[25] The Kansas PRB, on the other hand, only has the "authority and power . . . [to] grant parole for off-grid crimes or revocation of postrelease supervision or to order the revocation of an inmate's conditional release."[26] Furthermore, the U.S. Supreme Court has held that "judgments regarding prison security are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."[27] The Supreme Court was not referring to parole boards when it stated that expertise with these matters lies with correctional officials. Plaintiff has simply failed to point to any case or statute giving the PRB the authority to issue controlling custody determinations. Therefore, the Court grants summary judgment to Defendants on Plaintiff's Fourteenth Amendment due process claim.

2.  **Eighth Amendment**

Plaintiff alleges that Hrabe violated his Eighth Amendment right to be free from cruel and unusual punishment when he "issued a written directive requiring the plaintiff to live in a housing unit known to trigger his (PTSD) as a condition for Hrabe's approval of plaintiff's

---

[24] *See* K.S.A. § 75-5252 (duties of wardens); K.S.A. 75-5258 (duties of deputy wardens).

[25] K.S.A. § 75-5252.

[26] K.S.A. § 22-3709.

[27] *Turner v. Safely*, 482 U.S. 78, 86 (internal quotation marks omitted).

transfer to . . . the (KDOC) work release/private industry program." In the Tenth Circuit, " '[a] prison official may be held liable under the Eighth Amendment for denying human conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.' "[28] To succeed on this claim, Plaintiff must plead and prove both an objective and subjective component.[29] The objective component must involve "conditions sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities."[30] For the subjective component, Plaintiff must prove that Hrabe had a culpable state of mind or knew Plaintiff "faced a substantial risk of harm and disregarded that risk by failing to take reasonable measure to abate it."[31]

Hrabe argues that Plaintiff cannot meet either the objective or subjective component of a cruel and unusual punishment claim. Again, the Court agrees. This Court previously has held that an inmate's desire to be placed on work release did not amount to a "deprivation sufficient to establish cruel and unusual punishment."[32] Similarly, Hrabe's refusal to place Plaintiff in the work release program did not deprive Plaintiff of "the minimal civilized measure of life's necessities."[33] Accordingly, Hrabe is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

---

[28] *Scott v. Case Manager Owens*, 80 F. App'x 640, 643 (10th Cir. 2003) (quoting *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996)).

[29] *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 753 (10th Cir. 2014) (citing *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001)).

[30] *Id*. (internal quotation marks omitted).

[31] *Id*. (internal quotation marks omitted).

[32] *Warnock v. Kansas Dep't of Corr*., 2007 WL 1959197, at *3 (D. Kan. July 2, 2007*); see also Henry v. Goddard*, 2009 WL 3711596, at *6 (D. Kan. Nov. 3, 2009) (holding that alleged improper classification and denial of work release failed to state a constitutional violation).

[33] *Silverstein*, 559 F. App'x at 753 (internal quotation marks omitted).

### 3. First Amendment

Plaintiff's third alleged constitutional violation is a retaliation claim under the First Amendment. To prevail on this claim, Plaintiff must prove that (1) he engaged in constitutionally protected activity; (2) Hrabe's acts caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing that conduct; and (3) Hrabe's conduct was substantially motivated by Plaintiff's protected conduct.[34] "A prison claiming retaliation for exercising First Amendment rights must show that a retaliatory motive was the but-for cause of the challenged adverse action."[35]

Even assuming Plaintiff can meet his burden to show the first two elements of his retaliation claim, Plaintiff has not shown a genuine dispute that Hrabe's denial was motivated by any protected conduct. Defendants have provided ample evidence demonstrating that Hrabe's denial was based on institutional security reasons and not retaliation. Plaintiff has offered no evidence to undercut this explanation. Therefore, Plaintiff has not created a triable issue regarding causation, and Hrabe is entitled to summary judgment on this issue.

### 4. Plaintiff's Claims against Shelton in His Individual Capacity

Shelton asserts an additional basis as to why the Court should grant him summary judgment on Plaintiff's § 1983 claims. Shelton argues that Plaintiff has failed to allege any facts or come forward with any evidence showing that he personally participated in the deprivation of a constitutional right. Under § 1983, government officials are not vicariously liable for their

---

[34] *Shero v. City Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation omitted).

[35] *Strope v. McKune*, 382 F. App'x 705, 710 (10th Cir. 2010) (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

subordinate's misconduct.[36] To hold a supervisor liable for his subordinate's unconstitutional acts, a plaintiff must show an "affirmative link" between the supervisor and the constitutional violation.[37] A showing of this "affirmative link" requires more than a supervisor's knowledge of his subordinate's conduct.[38] Instead, it requires (1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind.[39]

Plaintiff has not provided any evidence showing Shelton's personal involvement in the alleged constitutional violations. Furthermore, the only allegations regarding Shelton's involvement are that Shelton failed to process a grievance, that Shelton affirmed the denial of Plaintiff's participation in and transfer to work release, and that Shelton denied Plaintiff's classification appeal. These allegations are not sufficient to meet the requirements for supervisor liability. Therefore, to the extent there are any remaining § 1983 claims against Shelton, the Court grants him summary judgment on these claims as well.

## B. ADA Claim

Plaintiff contends that Defendants violated the ADA by failing to classify him as minimum custody by exception based on his PTSD. As an initial matter, it is not clear which Defendants Plaintiff is asserting this claim against. To the extent he asserts it against individual Defendants Shelton, Hrabe, and Peterson, the Court grants summary judgment in their favor. Title II of the ADA prevents a "public entity" from discriminating against an otherwise qualified

---

[36] *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)).

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[38] *Id.*

[39] *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citations omitted).

individual with a disability on the basis of a disability.[40] Individuals are not covered by the ADA because they do not fall within the definition of "public entity."[41]

The Court also grants summary judgment in favor of Defendants KDOC and the State of Kansas on this claim. To establish a violation of the ADA, Plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of Defendants' services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of disability.[42] Part of this showing requires Plaintiff to present evidence demonstrating that he was " 'otherwise qualified' for the benefits sought and that officials denied him such benefits 'solely by reason of disability.' "[43]

This Court addressed a similar ADA claim in *Rix v. McClure*.[44] In *Rix*, an inmate alleged that the prison administrator violated the ADA by housing him in a medical isolation cell rather than with the general population because he needed leg braces and a cane.[45] In his summary judgment motion, the defendant argued that the plaintiff could not meet the third element of his claim because there was no evidence suggesting that the defendant's conduct was motivated by discriminatory animus.[46] The defendant presented evidence that the inmate's placement in the medical isolation cell was motivated by security concerns because the plaintiff could use his leg

---

[40] 42 U.S.C. § 12132.

[41] *Rix v. McClure*, 2011 WL 166731, at *6 (D. Kan. Jan. 19, 2011); *Hunter v. Correct Care Solns.*, 2007 WL 2954089, at *1 (D. Kan. Oct. 10, 2007).

[42] *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (citations omitted).

[43] *Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (quoting *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)).

[44] 2012 WL 1183435 (D. Kan. Apr. 9, 2012).

[45] *Id*. at *1.

[46] *Id* at *2.

braces and cane as a weapon.[47] The Court granted summary judgment for the defendant because his security concerns were legitimate and nondiscriminatory and because the plaintiff had no evidence that the restriction was due to his disability.[48]

In this case, Defendants also argue that Plaintiff cannot meet the third element of this ADA claim. Specifically, Defendants argue that their decision to deny Plaintiff minimum custody by exception was not based on his PTSD but on safety and security reasons. The Court agrees.

The undisputed facts show that Plaintiff has never been able to live in multi-occupancy housing and that he has experienced many difficulties while housed with other inmates, including disciplinary reports involving use of stimulants, purchase of marijuana, attempt to flush drugs, battery, escape, and arson. Hrabe explained in his affidavit that he denied Plaintiff's request for minimum custody classification because of his demonstrated history and inability to be housed in multi-occupancy housing. "Prison officials may restrict a prisoner's constitutionally and legally protected freedoms for legitimate penological reasons such as safety and security."[49] Defendants' security concerns regarding Plaintiff's behavior are a legitimate, nondiscriminatory reason to deny his custody request.

The only evidence offered by Plaintiff to demonstrate that the decision was based on a disability is the note written by Hrabe on the denial stating "NCF MH ISSUES, NOT SUITABLE MULTI-OCC. HOUSING." This note, however, does not controvert the evidence offered by Defendants showing Plaintiff's history of violence and failure to live in multi-

---

[47] *Id*.

[48] *Id*. at *2-*3.

[49] *Id*. at *2 (citing *Procunier*, 416 U.S. at 407-11; *Turner*, 482 U.S. at 89-90).

occupancy housing. The Court therefore grants summary judgment in favor of Defendants on Plaintiff's ADA claim.

**C. Conclusion**

In sum, the Court grants summary judgment to Defendants on Plaintiff's § 1983 claims. Plaintiff has failed to meet his burden to show a genuine issue of material fact with regard to any of his Fourteenth, Eighth, and First Amendment claims. The Court also grants summary judgment to Defendants on Plaintiff's ADA claim because Plaintiff has failed to show a genuine issue of material fact regarding the reason for Defendants' denial of his custody classification request. Because of these rulings, the Court need not consider Plaintiff's cross-motion for summary judgment and denies it as moot.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Cross-Motion for Summary Judgment and Objections to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 77) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated this 2nd day of March, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE